**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
WALTER HARRELL,               :
                              :  Civil Action No. 08-2225 (JLL)
           Petitioner,        :
                              :
      v.                      :  M E M O R A N D U M
                              :  O P I N I O N
STATE OF NEW JERSEY, et al.,  :  A N D
                              :  O R D E R
           Respondents.       :
_____:
```

Presently before the Court is Petitioner Walter Harrell's ("Petitioner" or "Harrell") petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition").

It appearing that:

1.  Harrell filed the Petition on May 6, 2008, and submitted the requisite filing fee three days later.  On June 12, 2008, Petitioner filed his "Brief on Support of the Writ of Habeas Corpus Petition."  See Docket Entry No. 2 ("Memorandum").

2.  Petitioner, a civilly committed individual, is currently confined at the Special Treatment Unit at Avenel, New Jersey.  (See Pet. at 2.)  Petitioner is challenging the order of civil commitment rendered on September 23, 2004 by the Superior Court of New Jersey, Law Division (hereinafter referred to as the "September 23 Order").  (See id.)  Petitioner asserts that he appealed the September 23 Order

to the Superior Court of New Jersey, Appellate Division,
which affirmed the lower court's decision on March 9, 2007.
(See id. at 2-3.)  According to the Petition, Harrell sought
certification from the Supreme Court of New Jersey, which
denied the same on May 15, 2007.[1]  (See id. at 3.)  The
instant Petition followed.

3.  While it is apparent on the face of the Petition that
Harrell seeks release from his current confinement (see Pet.
at 6 (stating that "Petitioner's commitment should be
vacated")), the Petition itself only expressly challenges
the civil commitment ensuing from the September 23 Order
(see id. at 2-3).  As of the date of the Petition, Harrell
could not have been in custody pursuant to said order as a
civil commitment pursuant to an order entered under the New
Jersey Sexually Violent Predator Act ("SVPA"), N.J. Stat.
Ann. § 30:4-27.24, et seq., cannot exceed the period of one
year.[2]  See, e.g., In re Civil Commitment of J.H.M., 367

---

[1]  This Court's own research efforts did not locate any
decisions associated with Petitioner's appeal and/or application
for certification.  However, the Court does not construe this
absence as indicative of Petitioner's failure to appeal his 2004
order of civil commitment and presumes, for the purposes of this
memorandum opinion only, that Petitioner pursued the appellate
processes described in the Petition.

[2]  Section 30:4-27.35 provides that "[a] person committed
under [the SVPA] shall be afforded an annual court review hearing
of the need for involuntary commitment as a sexually violent
predator." (Emphasis added.)

N.J. Super. 599, 611 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004) ("[C]ommitment pursuant to SVPA is only potentially indefinite, with one year being the maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding.") (citations, quotations, and brackets omitted).  The order Petitioner is challenging was entered on September 23, 2004, and expired, by operation of law, on September 22, 2005 (see Mem. at 2 (verifying that Petitioner's order of commitment entered on September 23, 2004 was the basis for Petitioner's confinement up until September 22, 2005); therefore, Petitioner must have had, at a minimum, three rounds of civil proceedings prior to the one which resulted in the order expressly challenged in his instant Petition.  It follows that Petitioner's confinement ensuing from the September 23 Order has necessarily expired, and Petitioner is currently confined only pursuant to an order of civil commitment entered by the Superior Court of New Jersey, Law Division during or after 2007.

4.   If this Court is to construe the Petition as a challenge to the September 23 Order, then it should dismiss the Petition on the basis that Petitioner is not "in custody" pursuant to that order.  Section 2254 provides, in pertinent part, that

> a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person
> in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in

> violation of the Constitution or laws or treaties
> of the United States.

28 U.S.C. § 2254(a)(emphasis added).  While the "in custody"
requirement is liberally construed for purposes of habeas
corpus, a petitioner must be in custody under the very order
he is attacking when the petition is filed in order for this
Court to have jurisdiction.  See Spencer v. Kemna, 523 U.S.
1, 7 (1998); Maleng v. Cook, 490 U.S. 488, 490-92 (1989)
(per curiam).  The Supreme Court held in Maleng "that once
the sentence imposed for a conviction has completely
expired, the collateral consequences of that conviction are
not themselves sufficient to render an individual 'in
custody' for the purposes of a habeas attack upon it."  490
U.S. at 492; see also Spencer, 523 U.S. at 7; compare DeFoy
v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005) (relying,
inter alia, on Garlotte v. Fordice, 515 U.S. 39, 41 (1995),
for the observation that an inmate is still "in custody"
under the already served sentence, if: (a) these sentence
were in a string of the inmate's consecutive prison terms,
and (b) the challenges are limited to the issue of the
inmate's parole eligibility, since the date of parole
eligibility is calculated on a *cumulative* basis, unlike the
fact of civil commitment which results from--and accrues at-
-a decision reached after a de novo hearing unrelated to the
existence, or the lack, of civil commitment(s) imposed

4

prior).  Since it is evident that the September 23 Order expressly challenged by Petitioner had expired long before he filed the instant Petition, he fails to meet the "in custody" requirement on his challenge to the September 23 Order.[3]  See Jackson v. Cal. Dep't of Mental Health, 399 F.3d 1069 (9th Cir. 2005) (a civilly committed sexual predator is not "in custody" pursuant to the order he challenges if, at the time of his habeas filing, he was in custody pursuant to a superceding order of civil commitment).  This Court, if it is to read the Petition literally, is constrained to dismiss the same, see Lonchar v. Thomas, 517 U.S. 314, 320 (1996) (a federal court should dismiss a habeas petition if it appears from the face of the application that the petitioner is not entitled to relief); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989), and to deny Petitioner a certificate of appealability under 28 U.S.C. § 2253(c).[4]

---

[3]  The Court cannot construe the instant Petition as an application for a writ of error coram nobis.  While a writ of error coram nobis has traditionally been used to attack convictions with continuing consequences when the petitioner is no longer "in custody" for purposes of habeas review, see United States v. Baptiste, 223 F.3d 188, 189 (3d Cir. 2000), the writ of error coram nobis is available in federal court only for those who were convicted in a federal court, see 28 U.S.C. 1651(a).

[4]  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides that an appeal may not be taken from a final order in a § 2254 proceeding unless a district judge issues a certificate of appealability ("COA") on the ground that "the

5.   Mindful of Petitioner's apparent intent to seek release from (and, thus, challenge the fact of) his current confinement, the Court construes the instant Petition as an attack on the order of civil commitment (entered on a date unspecified in the Petition) pursuant to which Petitioner is <u>currently</u> in custody, rather than a challenge to Petitioner's long-expired commitment ensuing from the September 23 Order.[5]

6.   The Petition states that Petitioner raised the following challenges ("2004 Grounds") on appeal to his September 23 Order:

   (a)   The [state] court erred in relying on hearsay contained in the testimony of the expert witnesses and their reports in reaching its decision;

---

applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000), the United States Supreme Court held that, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue [when] the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u> at 474.  Here, the Court denies Petitioner a COA pursuant to 28 U.S.C. § 2253(c) because it is clear that dismissal of Petitioner's challenge to his expired order of civil commitment for failure to meet the "in custody" requirement is correct.

   [5]  Habeas Rule 2 provides that a petitioner who seeks relief from different judgments rendered by state courts must file a separate petition covering each separate judgment.  <u>See</u> Habeas Rule 2(e).  Thus, Petitioner cannot challenge both his 2004 and current orders of civil commitment in this action.

(b)   The State failed to prove by clear and convincing evidence at [Petitioner's commitment] hearing that [Petitioner] was subject to commitment as a sexually violent predator;

(c)   [Petitioner's] commitment as a sexually violent predator violates the Double Jeopardy and Ex Post Facto Clauses.

(Pet. at 3.)   In contrast, Petitioner challenges his current civil commitment on the following four Grounds ("Current Grounds"):

(a)   The [state] court erred in relying on hearsay from testimony of expert witnesses to make findings of fact and in reaching its decision to involuntary commit Petitioner in violation of [the] Due Process Clause and[,] therefore[,] the State failed to prove by clear and convincing evidence that Petitioner should have been involuntarily committed.

(b)   Petitioner's involuntary commitment under the SVPA violates the . . . Ex Post Facto Clause.

(c)   Petitioner's commitment should be vacated as the State has denied Petitioner a less restrictive alternative to protect society from the potential danger of Petitioner, in which the right to free bodily movement is a constitutionally protected fundamental liberty interest.[6]

(d)   The Equal Protection [Clause] guarantees . . . require that Petitioner be afforded a trial by jury with New Jersey's past reliance on the Kansas' [Sexually Violent Predator] Act.

(Id. at 5-6.)   The Court, thus, construes Petitioner's Current Grounds as challenges to his current order of civil

---

[6]   Petitioner's Memorandum elaborates on his "free bodily movement" claim: Petitioner uses said phrase to refer to one's constitutional right to move between states.   See Mem. at 38-42.

7

commitment, and Petitioner's references to the 2004 Grounds
as an assertion that Petitioner exhausted his Current
Grounds by offering his 2004 Grounds for the state courts'
review.[7]

7.  A state prisoner applying for a writ of habeas corpus in
    federal court must first "exhaust[] the remedies available
    in the courts of the State," unless "there is an absence of
    available State corrective process[] or . . . circumstances
    exist that render such process ineffective."  28 U.S.C. §
    2254(b)(1); see Lambert v. Blackwell, 134 F.3d 506, 513 (3d
    Cir. 1997), cert. denied, 532 U.S. 919 (2001).  The courts
    of a state must be afforded an "opportunity to pass upon and
    correct alleged violations of its prisoners' federal
    rights."  Picard v. Connor, 404 U.S. 270, 275 (1971); Evans
    v. Ct. of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1230
    (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).  A
    petitioner must exhaust state remedies by presenting each of
    his federal constitutional claims to every level of the
    state courts.  28 U.S.C. § 2254(c); see Ross v. Petsock, 868
    F.2d 639, 641 (3d Cir. 1989).  Once a petitioner's federal
    claims have been fairly presented to the state's highest

---

[7]  The Court takes such an approach as it does not appear
from the face of the Petition that the Current Grounds were
presented to the Appellate Division of the Supreme Court of New
Jersey.

court, the exhaustion requirement is satisfied.  See Picard, 404 U.S. at 275; Castille v. Peoples, 489 U.S. 346, 350 (1989).  The petitioner generally bears the burden of proving all facts establishing exhaustion.  See Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition, in essence, the legal theory and factual predicate must be the same.  See Picard, 404 U.S. at 275-77.

8.  Federal courts have consistently adhered to the exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  Picard, 404 U.S. at 275 (citations and internal quotation marks omitted).  The exhaustion requirement is designed to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism.  See Granberry v. Greer, 481 U.S. 129, 131 (1987); Rose v. Lundy, 455 U.S. 509, 516-18 (1982); O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987).  However, even if a petitioner's claims have not been exhausted in the state courts, the petitioner might, under

certain circumstances, be entitled to review of his claims by a federal court.[8]  See, e.g., Frisbie v. Collins, 342 U.S. 519, 521 (1952) (non-exhaustion properly overlooked where "special circumstances" required "prompt federal intervention").  Because (a) "the failure to exhaust state remedies does not deprive [a federal court] of jurisdiction to consider the merits of a habeas corpus application," Granberry, 481 U.S. at 131 (citing Strickland v. Washington, 466 U.S. 668, 684 (1984)); (b) "the general rule of exhaustion 'is not rigid and inflexible,'" Granberry, 481 U.S. at 136 (quoting Frisbie, 342 U.S. at 521); and (c) the exhaustion doctrine and its currently codified exceptions

_____

[8] Addressing the issue of exhaustion and exceptions to the exhaustion requirement, Section 2254 provides that:

(1)   An application for a writ of habeas corpus . . .
      shall not be granted unless it appears that--

      (A)   the applicant has exhausted the remedies
            available in the courts of the State; or

      (B)   (i)     there is an absence of available
                    State corrective process; or

            (ii)    circumstances exist that render
                    such process ineffective to protect
                    the rights of the applicant.

(2)   An application for a writ of habeas corpus may be
      denied on the merits, notwithstanding the failure
      of the applicant to exhaust the remedies available
      in the courts of the State.

28 U.,S.C. § 2254(b).

10

have a long history of judicial development both before and
after their initial codification, see Brown v. Allen, 344
U.S. 443, 447-48 and n.3 (1953), the Supreme Court and
several lower courts have applied exceptions to the
exhaustion requirement.  See Granberry, 481 U.S. at 131;
Smith v. Goguen, 415 U.S. 566, 576-77 & n.19 (1974);
Frisbie, 342 U.S. at 521-22; cf. Duckworth v. Serrano, 454
U.S. 1, 5 (1981); see also Weaver v. Foltz, 888 F.2d 1097,
1099-1100 (6th Cir. 1989); Lockett v. Illinois Parole &
Pardon Bd., 600 F.2d 116, 117 (7th Cir. 1979); Sostre v.
Festa, 513 F.2d 1313, 1314 n.1 (2d Cir.), cert. denied, 423
U.S. 841 (1975); West v. Louisiana, 478 F.2d 1026, 1034-35
(5th Cir. 1973), adhered to in relevant part, 510 F.2d 363
(5th Cir. 1975) (en banc); Jenkins v. Fitzberger, 440 F.2d
1188, 1189 (4th Cir. 1971) (per curiam).  In general, the
question of whether the circumstances excusing exhaustion
"exist calls for a factual appraisal by the court in each
special situation."  Granberry, 481 U.S. at 136 (quoting
Frisbie, 342 U.S. at 522).  While, indeed, those special
circumstances "peculiar to [an individual] case, may never
come up again, and a discussion of them could not give
precision to the 'special circumstances' rule," Frisbie, 342
U.S. at 522, these exceptions might occur, for instance, in
cases where enforcement of the exhaustion appears futile, or

11

where dismissal would serve no interest, state or federal, and enforcement of the exhaustion requirement would burden the states with unnecessary litigation or would constitute a "hollow exercise in etiquette." See Little Light v. Crist, 649 F.2d 682, 684-85 (9th Cir. 1981) ("considerations of fairness" and desire to avoid burdening state judiciary supersede exhaustion doctrine); Nash v. Israel, 533 F. Supp. 1378, 1380 (E.D. Wis. 1982) (dismissal "would serve no purpose"); Emmett v. Ricketts, 397 F. Supp. 1025, 1047 (N.D. Ga. 1975) (stating that requiring exhaustion in the state courts in the particular circumstances of the case would be a "hollow exercise in etiquette").

9.   To illustrate, lack of exhaustion in the state courts might be excused if: (a) the highest state court consistently or recently has rejected claims identical to the petitioner's; or (b) all of the intermediate appellate courts in the state have rejected claims identical to the petitioner's, and the highest court has let those decisions stand; or (c) the state courts rejected an identical claim made by the petitioner's co-defendant; or (d) the state courts' statements or reasoning in denying the petitioner's other claims makes virtually certain that they also would reject the unexhausted claims. See, e.g., Lynce v. Mathis, 519 U.S. 433, 436 n.4 (1997) (noting that the court was

"satisfied . . . that exhaustion would have been futile"
because the state Supreme Court had previously rejected the
same claim in other cases and counsel for the state had "not
suggested any reason why the [state] courts would have
decided petitioner's case differently"); <u>Fisher v. Texas</u>,
169 F.3d 295, 303 (5th Cir. 1999) ("The futility exception
[to the exhaustion requirement] applies when . . . the
highest state court has recently decided the same legal
question adversely to the petitioner"); <u>Allen v. Attorney
General</u>, 80 F.3d 569, 572-73 (1st Cir. 1996) (finding a
claim exhausted because the state's highest court had
recently rejected identical claim and noting that, "[i]f
<u>stare</u> <u>decisis</u> looms, that is, if a state's highest court has
ruled unfavorably on a claim involving facts and issues
materially identical to those undergirding a federal habeas
petition and there is no plausible reason to believe that a
replay will persuade the court to reverse its field, then
the state judicial process becomes ineffective as a means of
protecting the petitioner's rights"); <u>Cunningham v.
DeRobertis</u>, 719 F.2d 892, 894-95 (7th Cir. 1983) (excusing
non-exhaustion on the grounds that the state courts rejected
an identical claim made by the petitioner's co-defendant and
stating that "the issue . . . has been exhausted -- albeit
not by petitioner [because the] issue has been squarely

presented to--and rejected by--the [state courts, and] no federalism purpose would be served by requiring petitioner personally to raise the issue again").

10. Consequently, it is not unfathomable for a sexually violent predator to succeed in establishing exhaustion of his challenges to the order mandating his current confinement by showing that he raised the same challenges to all levels of the New Jersey courts when he appealed his prior order of civil commitment, and those current challenges and the exhausted challenges involve materially identical facts and legal issues.  See Brown, 344 U.S. at 449, n.3 ("We do not believe Congress intended to require repetitious applications to state courts"); cf. Wilwording v. Swenson, 404 U.S. 249, 250 (1971) ("Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus.  . . .  Petitioners are not required to file repetitious applications in the state courts.  Nor does the mere possibility of success in additional proceedings bar federal relief"); Cunningham, 719 F.2d at 894-95; Colon, 603 F.2d at 406; Guichard, 471 F. Supp. at 787.  This proposition appears to be particularly fitting where, as here, an inflexible joint reading of the "in custody" and exhaustion requirements mandated by Section 2254 might create a nearly impenetrable barrier for a

14

civilly committed individual subject to yearly re-commitment
hearing involving a full de novo finding by the state
courts.[9]   See In re Commitment of K.D., 357 N.J. Super. 94,
99 (N.J. Super. Ct. App. Div. 2003) ("the purpose [of each
SVPA hearing] is to decide if [the next period of]
confinement . . . is proper").   This Court, therefore: (a)
rejects a reading of the SVPA regime as directly conflicting
with mandate of federal habeas review; (b) adopts a
harmonized reading of New Jersey's continuous commitment
regime under the SVPA and Section 2254's "in custody" and
exhaustion requirements, see Pennsylvania v. Dep't of Health

---

[9]   While this Court cannot rule out the possibility that a
litigant might be able to duly exhaust his challenges to his
order of civil commitment prior to expiration of that order and,
with enough time remaining for a habeas review to preserve the
federal court's core habeas power to grant relief in the form of
release from confinement, the realities of modern litigation
render such speedy exhaustion processes highly unlikely.   See,
e.g., Hubbart v. Knapp, 379 F.3d 773, 778 (9th Cir. 2004), cert.
denied, 543 U.S. 1071 (2005) ("We now hold that it is 'almost
certain' that a state detainee under [the state] civil commitment
scheme for sexually violent predators will be unable to exhaust
state remedies and 'fully litigate' a habeas petition in federal
courts within two years").   However, the time-consuming realities
of modern litigation do not render the SVPA unconstitutional,
i.e., a joint reading of the exhaustion and "in custody"
requirements through the prism of the state scheme of yearly de
novo hearings does not disenfranchise federal courts of their
power of habeas review because the federal law provides for
exceptions to the exhaustion requirement.   Cf. Boumediene v.
Bush, --S.Ct.--, No. 06-1195, 2008 WL 2369628, at*44-45, *73
(2008) (stating that a statutory regime is constitutional if it
allows inmates confined within the state's de jure power to
retain at least a narrow path to invoke the protections of the
Suspension Clause).

and Human Servs., 723 F.2d 1114, 1119 (3d Cir. 1983)
("[S]tatutory provisions enacted at different times should
be read as harmoniously as possible, so that each is given
effect and the provisions do not conflict"); and (c)
concludes that a civilly committed petitioner might, as one
way of qualifying for an exception to the exhaustion
requirement, be able to show a de facto exhaustion of state
remedies for the purposes of his challenges to a current
order of civil commitment through establishing exhaustion of
his prior order of civil commitment.  Cf. Wilwording, 404
U.S. at 250; Brown, 344 U.S. at 449, n.3.  In such cases, it
appears that, at the very least, two showings should be
made: (i) the claims challenging the petitioner's current
order of commitment and presented for federal habeas review
must be materially identical (as to both facts and legal
theories) to the challenges to the petitioner's expired
commitment order, which were presented to all levels of
state court shortly prior to the petitioner's filing of the
application at hand; and (ii) the very same challenges must
be articulated by the petitioner at least during the state
proceedings underlying his current order of civil
commitment, if not on appeal.  See Hubbart, 379 F.3d at 777
(resolving a similar dilemma by holding that petitioner's
"habeas petition [was] not moot because his claims were

16

capable of repetition yet evading review" and fell within a
"well-established exception to mootness").[10]  The burden to
show exhaustion by establishing such special circumstances,
including, <u>inter alia</u>, satisfaction of the aforesaid two
requirements, rests squarely with the petitioner.  <u>See</u>
<u>Toulson</u>, 987 F.2d at 987.

11.  Here, Petitioner's application, as drafted, unambiguously
     indicates that he is unable to meet the exhaustion
     requirement with respect to his Current Grounds, even if
     these Grounds were to be construed as challenges to his
     current commitment order on the basis of Petitioner's
     exhaustion of his 2004 order.

12.  It is true that, with respect to the second requirement,
     that is, the obligation to articulate the Current Grounds
     during the state proceedings underlying Petitioner's current
     commitment, this Court may hypothesize that Petitioner
     actually presented his Current Grounds for the record (since
     the Petition is wholly silent as to this issue).  Moreover,
     the Court may even presume that Petitioner would be able to

---

[10]  In <u>Hubbart</u>, the Court explained that the "well-
established exception to mootness applies when '(1) the
challenged action is in its duration too short to be fully
litigated prior to cessation or expiration, and (2) there is a
reasonable expectation that the same complaining party will be
subject to the same action again.' " 379 F.3d at 777 (quoting
<u>Spencer v. Kemna</u>, 523 U.S. at 17).  Said exception seems
especially apt in the case at bar.

show that the state courts' review was completed "shortly
prior" to his filing of the instant Petition, although the
almost one-year period of time separating the May 15, 2007
decision of the Supreme Court of New Jersey and Petitioner's
May 6, 2008 filing of the instant Petition certainly calls
into question the presumption that Petitioner's exhaustion
efforts resulted in state court rulings recent enough for
the purposes of this Court's instant collateral review
(since the state courts could have, indeed, changed their
position on the issues presented by Petitioner within the
period of virtually a year).  While able to make such
allowances, this Court cannot ignore qualitative differences
between Petitioner's four Current Grounds and the claims
contained in the exhausted 2004 Grounds.

13. One of Petitioner's Current grounds, the fact that
"Petitioner's involuntary commitment under the SVPA violates
the . . . Ex Post Facto Clause" (Pet. at 5-6), appears to be
identical in all material respects to one of Petitioner's
2004 Grounds, reading "[Petitioner's] commitment as a
sexually violent predator violates the Double Jeopardy and
Ex Post Facto Clauses," (id. at 3).  Indeed, the legal
argument in both exhausted and current claims seems to be
identical, addressing the interrelation between the Ex Post
Facto Clause of the United States Constitution and the power

18

of the State of New Jersey to invoke the SVPA for the purposes of civil commitment of persons in Petitioner's position.  Moreover, since the claim does not appear to turn on the factual findings unique to Petitioner's 2004 commitment hearing, the Court can justifiably conclude that the ex post facto challenge to Petitioner's current order of commitment and the challenge to his 2004 commitment order that was fully exhausted by Petitioner are sufficiently identical in all material respects.

14.  None of Petitioner's three remaining Current Grounds could be deemed sufficiently identical, in all material respects, to Petitioner's 2004 Grounds.  In fact, two of Petitioner's Current Grounds (reading "Petitioner's commitment should be vacated as the State has denied Petitioner a less restrictive alternative" and "[t]he Equal Protection [Clause] require[s] that Petitioner be afforded a trial by jury [as it is done under] the Kansas' [Sexually Violent Predator] Act") present legal issues having nothing in common with Petitioner's 2004 Grounds.  Thus, these two Current Grounds are wholly unexhausted for the purposes of this Court's collateral review.[11]  Although these two

---

[11]  Indeed, this Court cannot rule out the possibility that Petitioner actually exhausted these two 2004 Grounds but omitted to so inform this Court in his Petition.  The Court, however, takes Petitioner's allegations stated in his Petition as true, accord note 1, supra, and rules accordingly.

Current Grounds might not prove meritorious, as drafted,
they do not allow the Court to find, at the instant
juncture, that these Grounds raise issues addressable
without the prerequisite of exhaustion, e.g., issues of
purely state law or those clearly established in state
courts, or those necessarily failing to state a viable
federal challenge.[12]  Compare DeFoy, 393 F.3d at 444-45
(finding an exception to the exhaustion requirement where
the accumulated state case law conclusively indicated the
state courts' position and assured that the inmate would be
denied relief if he were to raise his constitutional
challenges in state courts).

15. Mere similarities in language between Petitioner's Current
Ground reading "[t]he [state] court erred in relying on

---

[12]   Petitioner's Ground Three, implicating the right to
interstate migration, is framed in terms that may be interpreted
as a facial challenge to the SVPA (i.e., challenging the
constitutionality of the state provision as drafted) and, in
addition, asserting challenges to the SVPA as applied
Petitioner's case on September 23, 2004.  Moreover, the heading
of Petitioner's Ground Four is not wholly representative of
Petitioner's argument associated with Ground Four.  While it is
apparent that Petitioner misreads the Equal Protection Clause as
mandating identical treatment of sexually violent predators in
Kansas and New Jersey (failing to realize that no federal equal
protection rights are implicated by a state's enactment of
sexually violent predator provisions, and the State of New Jersey
has no constitutional obligation to follow the Kansas model),
Petitioner's Memorandum articulates a claim vaguely resembling
that address in Apprendi v. New Jersey, 530 U.S. 466 (2000) (see
Mem. at 44 (arguing that any civil commitment requires a trial
before a jury)), hence preventing this Court from deeming this
claim excused from exhaustion as facially meritless.

hearsay from testimony of expert witnesses, [and] the State
failed to prove by clear and convincing evidence that
Petitioner should have been involuntary committed" and his
two 2004 Grounds reading, jointly, "[t]he [state] court
erred in relying on hearsay contained in the testimony of
the expert witnesses, [and the] State failed to prove by
clear and convincing evidence . . . that [Petitioner] was
subject to commitment as a sexually violent predator" (Pet.
at 3, 5-6), do not necessarily indicate that Petitioner duly
exhausted that Current Ground.  To the contrary, while it
appears sufficiently certain that the <u>legal</u> aspect of
Petitioner's Current Ground was properly presented to all
levels of the state court, it appears also virtually certain
that the challenges presented during the exhaustion process
were <u>factually</u> based on the content of expert testimony and
other evidence utilized during Petitioner's 2004 commitment
hearing.  However, without making certain assumptions about
issues never addressed in the current Petition,[13] the Court
has no reason to conclude that the factual predicate of
Petitioner's exhausted claims is identical in all material
respects to that of his Current Grounds, since the Petition

---

[13] Specifically, the Court will not theorize about whether
Petitioner's current order of commitment was based on the same
evidence, including the same expert testimony and the same
shortcomings as to the timeliness of the expert evaluation, that
was used by the State during Petitioner's 2004 hearing.

is wholly silent as to this issue.  Consequently, this Court
finds that only one of Petitioner's Current Grounds (the ex
post facto issue) is duly exhausted and, in the event
Petitioner actually raised that particular Ground during his
latest commitment hearing, may be subject to the Court's
instant collateral review.

16. Even if the Court is to read the exhaustion requirement
    broadly, the Petition presents, at best, a "mixed"
    application for the purposes of Petitioner's attack on the
    fact of his current confinement.  Generally, the enactment
    of a one-year statute of limitations for § 2254 habeas
    petitions, see 28 U.S.C. § 2244(d), "'has altered the
    context in which the choice of mechanisms for handling mixed
    petitions is to be made,'" Crews v. Horn, 360 F.3d 146, 151
    (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379
    (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Because of
    the one-year limitations period, dismissal of a timely-filed
    mixed petition may forever bar a petitioner from returning
    to federal court.  Consequently, "[s]taying a habeas
    petition pending exhaustion of state remedies is a
    permissible and effective way to avoid barring from federal
    court a petitioner who timely files a mixed petition."
    Crews, 360 F.3d at 151.  However, such a stay "should be
    available only in limited circumstances."  Ellison v.

22

Rogers, 484 F.3d 658, 662 (3d Cir. 2007) (citing Rhines v. Weber, 544 U.S. 269, 277 (2005)).  Alternatively, "if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  Rhines, 544 U.S. at 278 (citations omitted).  This Court concludes that, for the reasons detailed below, a grant of stay and abeyance appears inappropriate, and a decision to dismiss the entire Petition would not unreasonably impair Petitioner's right to obtain relief.

17.  The stay-and-abeyance analysis was coined as a result of the federal judiciary's concern that a petitioner who timely files a mixed petition might be still disfranchised of his ability to obtain federal relief through the operation of applicable statute of limitations.  See Crews, 360 F.3d at 151.  However, a habeas challenge by a civilly committed individual, amenable to a continuous commitment only through the mode of yearly re-commitment hearings conducted on de novo basis, cannot, by definition, become untimely.  On April 24, 1996, Congress enacted AEDPA, which provides that "[a] 1-year period of limitation shall apply to an

application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court."  28
U.S.C. § 2244(d)(1).  The limitations period begins to run
from "the date on which the judgment became final by the
conclusion of direct review or the expiration of the time
for seeking such review."  Id.  In other words, if the
petitioner "does not pursue a timely direct appeal, . . .
his [one-year] statute of limitation begins to run, on the
date on which the time for filing such an appeal expired."
Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).
Applying this rule to the case of a civilly committed
petitioner subject to yearly re-commitment proceedings, it
is apparent that, even if the petitioner does not take any
appellate action, his statute of limitations would expire
only after the "one year, plus the time to seek the first
level of appellate review" period, that is, by the time when
that petitioner would be in custody already pursuant to the
next, superceding order.  Consequently, by the time the
petitioner's habeas challenge might be in danger of becoming
untimely, this very challenge would necessarily fall outside
federal jurisdiction because of the operation of the "in
custody" requirement.  Conversely, a challenge to the fact
of the petitioner's order of current confinement meeting the
"in custody" requirement would necessarily be timely through

24

the operation of the yearly re-commitment mode of New Jersey SVPA.  Since it follows that a grant of stay and abeyance would be futile for the purposes of preserving the right of a civilly committed individual to obtain federal habeas relief, this Court declines to grant Petitioner a stay.

18. The Court similarly finds that denying Petitioner the opportunity to delete his two facially unexhausted and one likely-to-be-unexhausted Current Ground would not unreasonably impair Petitioner's right to obtain federal relief.  Indeed, as the foregoing discussion illustrates, at the current juncture, the Court has no information as to whether Petitioner even stated his sole potentially-exhausted ground during the commitment proceedings underlying his current confinement.  In light of: (a) the fact that Petitioner's habeas challenge cannot become time-barred; (b) the uncertainties associated with the issue of whether the state courts' ruling on Petitioner's ex post facto claim is "recent enough" to constitute the present position of state judiciary; and (c) the fact that the first three of Petitioner's four claims are either facially or potentially unexhausted, this Court finds that dismissal of Petitioner's instant application is warranted.  Petitioner's ability to file another petition challenging his current commitment (provided that he meets his burden of showing

25

exhaustion of his challenges pertinent to the order of commitment pursuant to which Petitioner is in custody at the time of his filing of such challenges) sufficiently protects Petitioner's right to obtain habeas relief (including relief in the form of release from confinement).  Moreover, Petitioner's ability to file a civil rights challenge to his current order of commitment without having the obligation to meet the exhaustion requirement (in the event Petitioner wishes to seek remedy other than release), provides additional protections to Petitioner's federal rights, hence warranting dismissal of the instant matter.[14]  Accordingly,

---

[14]  The scheme of the SVPA, although not guaranteeing a civilly committed individual's right to initiate compulsory review of his commitment at any point in time, allows such individual to, at least, seek such at any time.  See N.J. Stat. Ann. § 30:4-27.36(d) ("Nothing in [the SVPA] shall prohibit a person from filing a petition for discharge from involuntary commitment status without authorization from the Department of Human Services.  Upon receipt of such a petition, the court shall review the petition to determine. . . whether [a new hearing should be conducted because] the condition of the person has so changed . . . that a hearing is warranted, or [because] a professional expert evaluation . . . stating . . . the person is not likely to engage in acts of sexual violence if released [has been entered]").  In addition, the SVPA provides for the state court's right to conduct re-commitment hearings as often as once a month.  N.J. Stat. Ann. § 30:4-27.35 ("The court may schedule additional review hearings but, except in extraordinary circumstances, not more often than once every 30 days").  Consequently, if Petitioner is of the opinion that his current order of civil commitment is constitutionally deficient, and Petitioner's efforts to obtain a curative hearing under the aforesaid state provisions proved futile, nothing prevents Petitioner from seeking a non-release injunctive relief and/or damages through filing of a federal civil action.

**IT IS** on this 20th day of June, 2008,

**ORDERED** that the Petition is dismissed for failure to exhaust state remedies, pursuant to 28 U.S.C. § 2254,[15] WITHOUT PREJUDICE to Petitioner's filing a petition setting forth claims that Petitioner believes to be duly exhausted or subject to exception to the exhaustion requirement; and it is further

**ORDERED** that the a certificate of appealability will not issue, pursuant to 28 U.S.C. § 2253(c); and it is further

**ORDERED** that the Clerk shall serve this Order upon Petitioner by regular U.S. mail and close the file in this matter.

**SO ORDERED.**

/s/ Jose L. Linares
United States District Judge

---

[15] This conclusion applies regardless of whether the Petition is construed as challenging Petitioner's expired order rendered in 2004 and directing civil commitment for one year, or his current order of civil commitment entered after 2004.

27